# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| DASHANTE SCOTT JONES, | : | |
| *Plaintiff*, | : | |
| | : | Civil No. 3:20-cv-475 (VAB) |
| v. | : | |
| | : | |
| WAGNER, *et al.*, | : | |
| *Defendants*. | : | |

## INITIAL REVIEW ORDER

Dashante Scott Jones ("Plaintiff"), currently incarcerated at New Haven Correctional Center in New Haven, Connecticut, has filed a Complaint *pro se*, under 42 U.S.C. § 1983, against Officer Wagner, Lieutenant Durant, Nurse Delrose Roderick, Captain Watson, and District Administrator Edward Maldonado (collectively "Defendants").[1] Mr. Jones alleges the use of excessive force, retaliation, and deliberate indifference to his medical needs. He seeks damages from Defendants in their individual and official capacities.

For the reasons discussed below, all claims against Captain Watson and District Administrator Maldonado, the conspiracy claim, and the official capacity claims for damages against all Defendants are **DISMISSED** under 28 U.S.C. § 1915A(b). The case will proceed against Defendants Wagner, Durant, and Roderick on the federal claims for use of excessive force, retaliation, and deliberate indifference to serious medical needs as well as the supplemental state law claims.

---

[1] Mr. Jones is proceeding *in forma pauperis*. Order Granting Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 7 (Apr. 13, 2020).

I.     BACKGROUND

On January 23, 2018, while Mr. Jones allegedly had been confined at Cheshire Correctional Institution, Officer Wagner allegedly attempted to strangle Mr. Jones. Compl., ECF No. 1 at 5 (Apr. 3, 2020). Mr. Jones alleges Officer Wagner "slammed" him against a brick wall and "slammed" his hand into Mr. Jones's throat. *Id.* Officer Wagner allegedly commented that Mr. Jones had filed a lawsuit against Warden Erfe, and just before the incident allegedly made comments like, "[T]his is for Erfe." *Id.* Mr. Jones allegedly suffered injuries to his throat, head, neck, and back. *Id.* He now allegedly experiences chronic headaches, back and neck pain, and difficulty swallowing. *Id.* at 6. Mr. Jones allegedly also feels paranoid whenever a correctional officer approaches him. *Id.*

Officer Johnson allegedly intervened and stopped the attack. *Id.* He allegedly called a code when Officer Wagner began shouting that Mr. Jones had assaulted him. *Id.* Lieutenant Durant allegedly responded to the code and asked what happened. *Id.* When Officer Wagner said that Mr. Jones assaulted him, Lieutenant Durant allegedly questioned Mr. Jones. *Id.* Mr. Jones allegedly said "asthma" and "can't breathe." *Id.* After repeated questioning, Mr. Jones allegedly said Officer Wagner was lying. *Id.*

Lieutenant Durant allegedly had his pepper spray in his hand but, before using it, allegedly asked Nurse Roderick to verify whether Mr. Jones had asthma. *Id.* Nurse Roderick allegedly confirmed that he did. *Id.* After an alleged whispered conversation, which Mr. Jones could not hear, Lieutenant Durant allegedly deployed the pepper spray. *Id.* at 7. Nurse Roderick allegedly completed a medical incident report approving his placement in in-cell restraints. *Id.* at 12. The report allegedly stated that Mr. Jones had no injuries, pain, or discomfort. *Id.* at 7, 12. She allegedly did not mention the pepper spray or its effects. *Id.* Nurse Roderick also allegedly

did not help decontaminate Mr. Jones. *Id.* at 7. He allegedly continued to choke and experience the burning of his eyes, skin, and scalp. *Id.* Prison staff allegedly placed Mr. Jones in in-cell restraints for seventy-two hours, and he allegedly could not clean his skin or hair during that time. *Id.* His dreadlocks also became damaged by the chemical agent. *Id.* at 8.

Mr. Jones allegedly repeatedly asked Captain Watson to fire Officer Wagner, but he refused. *Id.* District Administrator Maldonado allegedly did not timely respond to Mr. Jones's grievance and did not fire Officer Wagner. *Id.* Mr. Jones allegedly received a disciplinary report as a result of the incident, but prison officials allegedly found him to be not guilty. *Id.* at 9.

On April 3, 2020, Mr. Jones filed this Complaint and motion for leave to proceed *in forma pauperis.* Compl.; Mot. to Proceed *In Forma Pauperis*, ECF No. 2 (Apr. 3, 2020).

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P.

8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Mr. Jones[2] asserts the following claims: use of excessive force, assault, and retaliation against Officer Wagner; use of excessive force and assault for deploying the pepper spray against Lieutenant Durant; conspiracy against Officer Wagner and Lieutenant Durant; falsifying reports and deliberate indifference to serious medical needs against Nurse Roderick; supervisory liability against Captain Watson; and supervisory liability and improper handling of grievances against District Administrator Maldonado.

### A.  Use of Excessive Force

The use of excessive force against a prisoner can constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *accord Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (per curiam). The "core judicial inquiry" is not "whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

To state a claim for use of excessive force, a plaintiff must allege facts showing that, subjectively, the defendant acted maliciously or sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson*, 503 U.S. at 7. To evaluate the defendant's conduct, the court considers various factors including the extent of the injuries and the mental state of the inmate; "the need for application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendant[]; and any efforts by the defendant[] to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291

---

[2] Based on Mr. Jones's allegation of his confinement at the Cheshire Correctional Institution, the Court assumes that Mr. Jones had been a sentenced inmate at the time of the incident.

(2d Cir. 2003) (internal quotation marks omitted) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

In addition, Mr. Jones must show, objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 8). A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9–10). It is the force used, not the injury sustained, that "ultimately counts." *Id.* A malicious use of force constitutes a per se Eighth Amendment violation because "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (quoting *Hudson*, 503 U.S. at 9).

Mr. Jones alleges that Officer Wagner used excessive force by assaulting him and Lieutenant Durant used excessive force by deploying the chemical agent. Mr. Jones alleges that Officer Wagner slammed him against the wall and choked him when they were walking into the dayroom. In his view, the surveillance video presented at the disciplinary hearing showed the two officers walking with Mr. Jones in handcuffs, when Officer Wagner acted. Compl. at 21. Mr. Jones alleges that he did not act in a threatening manner before the attack. Based on these allegations, Mr. Jones has sufficiently alleged that Officer Wagner acted maliciously and used excessive force.

"Courts considering the use of chemical agents have held that deployment of a chemical agent is an accepted means of controlling an unruly or disruptive inmate." *Davis v. Rinaldi*, No. 3:19cv504 (CSH), 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (quoting *Alston v. Butkiewicus*, No. 3:09cv207 (CSH), 2012 WL 6093887, at *14 (D. Conn. Dec. 7, 2012)). But a constitutional violation can occur when the use of a chemical agent is malicious and sadistic. For

example, "a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force." *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010).

Mr. Jones alleges having been handcuffed, and offering no resistance, while having difficulty breathing. Before deploying the chemical agent, Lieutenant Durant allegedly had been told of Mr. Jones's asthma. As a result, Mr. Jones has plausibly stated a claim against Lieutenant Durant for use of excessive force.

Accordingly, the excessive force claims will proceed against Officer Wagner and Lieutenant Durant.

## B. Retaliation

To state a cognizable First Amendment retaliation claim, Mr. Jones must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). The adverse action must be sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id.* at 93–94.

Regarding the second element, the Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). Courts consider the circumstances of a particular case when evaluating the second element. *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may

be required to tolerate more than public employees . . . before a retaliatory action taken against them is considered adverse" (internal quotation marks and citation omitted)).

Mr. Jones alleges that Officer Wagner used force against him in retaliation for a lawsuit filed against Warden Erfe. Filing a lawsuit is protected activity. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected activity). More specifically, for this alleged reason, Officer Wagner attacked and attempted to strangle him. Finally, Mr. Jones alleges that Officer Wagner always spoke about the lawsuit against Warden Erfe and, immediately before the assault, said "this is for Erfe." These factual allegations are sufficient to establish both an adverse action and a causal connection between Officer Wagner's action and Mr. Jones's protected activity.

Accordingly, the retaliation claim will proceed at this time.

## C. Conspiracy

42 U.S.C. § 1985 provides an action for damages caused by "two or more persons" who conspire to deprive someone of equal protection of the laws, so long as one person takes an act in furtherance of the object of the conspiracy. 42 U.S.C. § 1985(3). To allege a Section 1985(3) claim, a plaintiff must plead "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the law, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Rini v. Zwirn*, 886 F. Supp. 270, 290 (E.D.N.Y. 1995) (citing *United Bhd. Of Carpenters and Joiners, Local 610 v. Scott*, 463 U.S. 825, 828–29(1983)).

To maintain a Section 1985 action, "a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or

tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Subsection (1) of Section 1985 prohibits conspiracies to prevent federal officials from performing their duties. *Harnage v. Dzurenda*, No. 3:14-cv-885 (SRU), 2014 WL 3360342, at *2 (D. Conn. July 9, 2014). Subsection (2) of this statute prohibits conspiracies intended to deter witnesses from participating in state or federal judicial proceedings. *Id*. Finally, subsection (3) prohibits conspiracies to deprive persons of equal protection under the laws. *Id*.

Mr. Jones asserts a conspiracy claim against defendants Wagner, Durant, and Roderick, but fails to allege facts showing that they engaged in some conspiracy to deprive him of equal protection under the laws based on race or other class-based discriminatory animus. *See Carter v. Incorporated Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) ("Moreover, '[42 U.S.C.] §§ 1985 and 1986 require some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" (citations omitted)).

Mr. Jones's claim fails under the intracorporate conspiracy doctrine as well. *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d. Cir. 2018) ("[I]n the antitrust context, the Supreme Court has held that an employer cannot be deemed to have conspired with its employees, and we have joined some of our sister Circuits in extending that 'intracorporate conspiracy doctrine' to the context of conspiracies to interfere with civil rights in violation of 42 U.S.C. § 1985."); *Murphy v. City of Stamford*, No. 3:13-cv-00942 (JCH), 2014 WL 1415158, at *3 (D. Conn. Apr. 14, 2014) ("Under the intracorporate conspiracy doctrine, no section 1985(3) conspiracy exists 'if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment.'" (quoting *Hermann v. moore*, 576 F.2d 453, 459 (2d Cir

1978)). District courts within this Circuit have applied the intracorporate conspiracy doctrine to Section 1983 cases and, in particular, to Section 1983 cases filed by prisoners. *See Livingston v. Hoffnagle*, No. 9:19-CV-0353(GLS/CFH), 2019 WL 7500501, at *16 (N.D.N.Y. Nov. 8, 2019) (citing cases), *report and recommendation adopted*, 2020 WL 95431 (N.D.N.Y. Jan. 8, 2020).

Accordingly, because all of the defendants are correctional employees, Mr. Jones's conspiracy claim will be dismissed.

### D.  Deliberate Indifference to Medical Needs

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To state a claim for deliberate indifference to serious medical needs, Mr. Jones must allege facts showing both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that Mr. Jones would suffer serious harm as a result of their conduct. *Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence, however, does not rise to the level of deliberate indifference and is not cognizable under Section 1983. *See id.* at 280. Nor does a disagreement

over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

The effects of being sprayed with a chemical agent have been considered sufficiently serious to constitute a serious medical need. *See Deegan v. Doe #1*, No. 3:19-cv-1356 (MPS), 2019 WL 59648126, at *5 (D. Conn. Nov. 13, 2019) (inmate plausibly alleges serious medical need based on pain from head injury during altercation with another inmate and pain from chemical agent sprayed in his face and on his upper body); *Parsons v. City of N.Y.*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) ("Injuries or pain resulting from being sprayed with mace sufficiently establish the existence of a serious medical need deserving of medical attention.").

Nurse Roderick allegedly had been deliberately indifferent to Mr. Jones's serious medical needs by failing to report and treat the effects of the chemical agent. Because of his asthma—something known to Nurse Roderick—Mr. Jones allegedly should not have been sprayed with a chemical agent. Compl. at 6–7. The effects of the chemical agent on Mr. Jones and his subsequent complaints allegedly also should have been recorded on the medical incident report, and steps allegedly should have been taken to ensure his proper decontamination. *Id.* at 7. Furthermore, Nurse Roderick allegedly approved him for placement in in-cell restraints, even though the restraints would prevent him from properly decontaminating. *Id.*

At this stage of litigation, these allegations are sufficient to state a deliberate indifference claim against Nurse Roderick. *See Deegan v. Washington*, No. 3:19-cv-1356 (MPS), 2020 WL 1812686, at *2–3, 4 (D. Conn. Apr. 9, 2020) (complaints of pain from chemical agent sufficient to put nurse on notice of need for treatment); *Al-Bukhari v. Semple*, No. 3:16-cv-1428 (SRU), 2017 WL 2125746, at *4 (D. Conn. May 16, 2017) (allegation that prisoner "informed the

correctional officers and nurses that he was suffering from extreme pain as a result of being sprayed with a chemical agent and [that] the staff repeatedly denied his requests for an adequate shower to clean himself and decontaminate the agent" was sufficient to state plausible deliberate indifference claim).

Accordingly, Mr. Jones's deliberate indifference to medical needs claim will proceed against Nurse Roderick.

### E. Grievance Procedures

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). Mr. Jones contends, however, that District Administrator Maldonado unnecessarily delayed his grievance appeal.

Because Mr. Jones has no constitutionally protected right to any particular grievance procedures or to have his grievance timely processed, this claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### F. Supervisory Liability

To state a cognizable claim for supervisor liability, Mr. Jones must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant

12

> exhibited deliberate indifference . . . by failing to act on information
> indicating that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995)). Knowledge of an isolated incident after the incident, however, does not

support a claim for supervisory liability. *See Ziemba v. Armstrong*, 430 F.3d 623, 625 (2d Cir.

2005) (insufficient evidence to support claim for supervisory liability where supervisor did not

learn of incident until long after it concluded); *Andrews v. Gates*, No. 3:17-cv-1233 (SRU), 2019

WL 2930063, at *8 (D. Conn. July 8, 2019) (notice after the fact of an isolated incident

insufficient to establish supervisory liability) (citations omitted).

Mr. Jones asserts claims for supervisory liability against Captain Watson and District

Administrator Maldonado. He argues that neither defendant properly supervised Officer Wagner.

As an example, Mr. Jones states that neither defendant fired Officer Wagner as Mr. Jones

requested.

Because Mr. Jones alleges only an isolated incident, his supervisory liability claims are

dismissed under 28 U.S.C. § 1915A(b)(1).

## G. Official Capacity Claims

The Eleventh Amendment prohibits an award of money damages against state officials in

their official capacities unless the state has waived this immunity or Congress has abrogated it.

*Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign

immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Mr. Jones alleges no facts suggesting

that the state has waived immunity in this case. Although Mr. Jones names all Defendants in

their individual and official capacities, he seeks only damages. Thus, Mr. Jones cannot receive

damages from Defendants in their official capacities.

Accordingly, any claim for damages against Defendants in their official capacities will be

dismissed under 28 U.S.C. § 1915A(b)(2).

### H.  State Law Claims

Mr. Jones contends that the conduct of defendants Wagner, Durant, and Roderick underlying his federal claims also support various state law claims. Because the federal claims against these defendants are proceeding, the Court will exercise supplemental jurisdiction over Mr. Jones's state law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related . . . ."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–29 (1966) (a district court maintains supplemental jurisdiction over state law claims when the claims "derive from a common nucleus of operative fact" as the federal claims). Of course, this does not preclude the defendants from addressing any of these claims in a subsequent motion.

## IV.    CONCLUSION

For the reasons discussed above, all claims against Captain Watson and District Administrator Maldonado, the conspiracy claim, and the official capacity claims for damages against all Defendants are **DISMISSED** under 28 U.S.C. § 1915A(b). The case will proceed against Officer Wagner, Lieutenant Durant, and Nurse Roderick on the federal claims for use of excessive force, retaliation, and deliberate indifference to serious medical needs as well as the supplemental state law claims.

The Court enters the following orders:

(1)    The Clerk shall verify the current work addresses for Officer Wagner, Lieutenant Durant, and Nurse Roderick with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each Defendant by **August 7, 2020**, and report to the court on the status of the waiver request by **August 21, 2020**. If any Defendant fails to return

14

the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the Defendant in his or her individual capacity and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)      The Clerk shall send Plaintiff a copy of this Order.

(3)      The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)      The Defendants shall file their response, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **February 12, 2021**. Discovery requests need not be filed with the court.

(6)      All motions for summary judgment shall be filed by **March 19, 2021**.

(7)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)      If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new

address.

(9)      Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(10)      The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**SO ORDERED** this 24th day of July, 2020 at Bridgeport, Connecticut.

/s/_____
Victor A. Bolden
United States District Judge