## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

DASHANTE SCOTT JONES,
   *Plaintiff,*

  v.

WAGNER et al.,
   *Defendants.*

No. 3:20-CV-00475 (VAB)

## RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On April 3, 2020, Dashante Scott Jones ("Plaintiff"), currently incarcerated, filed a *pro se* Complaint against corrections officers at Cheshire Correctional Institution in Cheshire, Connecticut, asserting various federal claims under 42 U.S.C. § 1983 in addition to state law claims. *See* Compl., ECF No. 1 (Apr. 3, 2020) ("Compl."). After initial review, the only remaining claims are for use of excessive force, retaliation, and deliberate indifference to medical needs, in addition to supplemental state law claims. *See* Initial Review Order, ECF No. 8 (July 24, 2020) ("Initial Review Order"). Only Officer Wagner, Lieutenant Durant, and Nurse Delrose Broderick remain as Defendants. *Id.*

Both Mr. Jones and Defendants have moved for summary judgment. *See* Def.s. Mot. for Summ. J., ECF No. 91 (Jan. 14, 2022); Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J., ECF No. 91-1 (Jan. 14, 2022) ("Defs. Mot."); Pl. Mot for Summ. J., ECF No. 70 (Dec. 28, 2021) ("Pl. Mot.").

For the following reasons, Mr. Jones's [70] motion for summary judgment is **DENIED**. Defendants' [91] motion for summary judgment is **DENIED in part** as to the excessive force claims against Officer Wagner and Lieutenant Durant, as well as the state law claims for assault

and battery; Defendants' motion for summary judgment is **GRANTED in part** as to all other remaining federal claims.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

On January 23, 2018, Mr. Jones remained in the custody of the Connecticut Department of Correction ("DOC") at Cheshire Correctional Institution. Defs.' Local Rule 56(a)(1) Statement ¶¶ 1–2, ECF No. 91-2 (Jan. 14, 2022) ("Defs. SMF"). At approximately 10:00 a.m., Officer Wagner escorted Mr. Jones from his cell to the Restrictive Housing Unit dayroom to speak with Counselor Mack about a disciplinary charge. *Id.* ¶ 5. During the escort, correctional staff placed Mr. Jones in handcuffs with his hands in front of his body. *Id.* ¶ 6.

After entering the dayroom, Mr. Jones started to walk away from Officer Wagner because he allegedly wanted to put a grievance in the administrative remedies box. *Id.* ¶ 7. Officer Wagner told Mr. Jones to "stop" and "come back." *Id.* ¶ 8. Officer Wagner advised Mr. Jones to give him the grievance to deposit in the box, or to deliver the grievance to Counselor Mack to deposit. *Id.* Mr. Jones began arguing with Officer Wagner and insisted that he put the grievance in the box himself. *Id.* ¶ 9.

---

[1] The facts are taken from Defendants' Local Rule 56(a) Statements and supporting exhibits. *See* Local Rule 56(a)1 Statement, ECF No. 91-2 (Jan. 14, 2021). Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)1. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Although Defendants informed Mr. Jones of his obligation to respond to the motion for summary judgment and the contents of a proper response, *see* Notice to Self-Represented Litigant Concerning Mot. for Summ. J. as Required by Local R. of Civ. Pro 56(6), ECF No. 91-18 (Jan. 14, 2022), Mr. Jones has not filed a Local Rule 56(a)2 Statement with his objections to the motion for summary judgment, *see* Obj., ECF Nos. 96, 101 . "In deference to . . . [p]laintiff's *pro se* status," this Court, "to the extent possible, will regard . . . [p]laintiff's version of the facts contained in his opposition (excluding arguments or conclusory statements) as responsive" to the Local Rule 56(a)1 Statement, to the extent they are supported by the evidence. *Wilks v. Elizabeth Arden, Inc.*, 507 F. Supp. 2d 179, 185 (D. Conn. 2007); *see also Rooks v. Santiago*, No. 3:20-CV-299 (MPS), 2022 WL 561412, at *4 (D. Conn. Feb. 24, 2022) ("Although the court is required to read a self-represented party's papers liberally and interpret them to raise the strongest arguments that they suggest, unsupported allegations do not create a material issue of fact and do not overcome a properly supported motion for summary judgment." (citing, *inter alia, Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks omitted))).

At the time, Officer Johnson was working in the unit. *Id*. ¶ 10. From his station, he saw Mr. Jones walk away from Officer Wagner, while being escorted to the day room. *Id*. Because Mr. Jones was "upset" and "somewhat defiant" toward Officer Wagner, Officer Johnson continued to monitor Mr. Jones as he entered the dayroom. *Id*. ¶ 11.

Officer Johnson left his station and went into the dayroom to assist Officer Wagner, in response to what he perceived as Mr. Jones's increasingly confrontational demeanor. *Id*. ¶ 15. Upon arrival, Officer Johnson told Mr. Jones to stop arguing and sit at a table, but Mr. Jones did not do so. *Id*. ¶ 16.

Mr. Jones then took several steps away from Officer Johnson and stepped toward Officer Wagner, closing the distance between them. *Id*. ¶ 17. Officer Wagner believed that Mr. Jones intended to assault him. *Id*. ¶ 18. He grabbed Mr. Jones by the arm and the collar of his jumpsuit and pushed Mr. Jones toward a nearby wall. *Id*.

Officer Johnson called a code for inmate assault on staff on his handheld radio while this was occurring and then assisted Officer Wagner in securing Mr. Jones to the wall. *Id*. ¶ 19. The officers then moved Mr. Jones to the floor, with the assistance of Counselor Mack. *Id*. ¶¶ 21, 22.

While Mr. Jones was on the floor facing up, Officer Johnson was facing down with his body partially against the wall and partially on Mr. Jones's left side. *Id*. ¶ 27. Officer Wagner was kneeling on the floor on Mr. Jones's right side. *Id*. ¶ 28. He denies that he grabbed Mr. Jones by the throat. *Id*. ¶ 23.

Lieutenant Durant arrived first in response to the code. *Id*. ¶ 29. Upon entering the dayroom, he yelled to Mr. Jones to stop resisting or he would be pepper sprayed. *Id*. ¶ 30. Lieutenant Durant then deployed a single burst of chemical agent in Mr. Jones's face. *Id*. ¶ 31.

With Mr. Jones secured to the floor, Lieutenant Durant relieved Officer Wagner and

ordered him to report to the medical unit. *Id*. ¶¶ 33–34. Officer Wagner had no injuries. *Id*. ¶ 34.

While Mr. Jones was secured to the floor, he told Lieutenant Durant that the chemical agent should not have been used because he has asthma.[2] *Id*. ¶ 37. Lieutenant Durant responded that Mr. Jones was able to talk. *Id*. ¶ 38. He observed no physical or respiratory difficulties. *Id*. ¶ 39. Nurse Broderick did not speak with Lieutenant Durant before or upon arrival at the Restrictive Housing Unit in response to the code.[3] *Id*. ¶¶ 46, 47.

Lieutenant Durant ordered the officers holding Mr. Jones to assist him to his feet and ordered Mr. Jones to walk across the hall to the shower for decontamination. *Id*. ¶ 40. Lieutenant Durant accompanied them to the shower. *Id*. While Mr. Jones was under the shower, Lieutenant Durant told Mr. Jones to open his eyes to flush them. *Id*. ¶ 41. Mr. Jones later complained that he was not properly decontaminated.[4] *Id*.

Lieutenant Durant directed the officers to escort Mr. Jones to a cell where he underwent a controlled strip search for contraband. *Id*. ¶ 42. No contraband was found. *Id*. During the entire time, Mr. Jones was speaking loudly to Lieutenant Durant and the video camera. *Id*. ¶ 43. Mr. Jones showed no signs of respiratory distress from the chemical agent. *Id*.

After the search, Mr. Jones was dressed in a clean jumpsuit and in-cell restraints were applied. *Id*. ¶ 44. Lieutenant Durant then ordered Nurse Broderick to enter the cell, examine Mr. Jones, and check the restraints. *Id*. ¶ 45. When Nurse Broderick asked Mr. Jones if he was

---

[2] Mr. Jones alleges, without substantiation, that he said "asthma" before Lieutenant Durant deployed the chemical agent. Compl. at 6.

[3] No correctional staff contacted Nurse Broderick before deploying the chemical agent, as they are only required to do so with a planned use of force where time is not of the essence, such as a cell extraction. Def. SMF ¶ 2.

[4] The procedure for decontamination is for the inmate to put his head under a running shower to flush the chemical agent out of his eyes and clean the residue from his scalp and skin. Def. SMF ¶ 54. The procedure is not effective unless the inmate opens his eyes. *Id*.

injured, Mr. Jones denied any pain or discomfort. *Id*. Nurse Broderick did not observe any injuries or effects of the chemical agent. *Id*. ¶ 45, 57. She checked the ankle and wrist restraints and found sufficient room for circulation and range of motion. *Id*. ¶ 45. Nurse Broderick did not note any suicidal ideation but directed Mr. Jones to follow up with the medical and mental health units as needed. *Id*. After Nurse Broderick completed her examination and restraint check, Lieutenant Durant gave Mr. Jones his medically prescribed inhaler, which Mr. Jones retained in his cell. *Id*. ¶ 59.

A few minutes later, Mr. Jones was seen by nursing staff at his cell. *Id*. ¶ 61. He asked that his face be cleaned but reported no other complaints. *Id*. Nursing staff noted no contraindications to in-cell restraint status. *Id*. Nurse Ventrella then examined Mr. Jones in the early evening. *Id*. ¶ 64. She reported "no marks or injuries noted or verbalized by inmate regarding in-cell restraint administration." *Id*. On her report, she acknowledges that there were contraindications in Mr. Jones's medical records regarding use of a chemical agent but noted that this was not a planned use of force. *Id*.

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id*. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Instead, a party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'").

### III.    DISCUSSION

#### 1.   Excessive Force

To prevail on a claim for use of excessive force in violation of the Eighth Amendment, Mr. Jones must present evidence establishing objective and subjective components. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000). The objective component focuses on the harm done to the prisoner in light of "contemporary standards of decency." *Id*. at 21 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The amount of harm required depends on the nature of the claim. *Id*. As a result, although some degree of injury is usually required, Mr. Jones need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992))). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9).  A *de minimis* use of force will rarely be sufficient to satisfy the objective component unless the force used is also "repugnant to the conscience of mankind." *Id*. at 37–38 (quoting *Hudson*, 503 U.S. at 9–10).

The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'" *Id*. at 40 (quoting *Hudson*, 503 U.S. at 7). The Court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. (internal quotation marks and citation omitted).

7

Mr. Jones bears the burden of establishing both the objective and subjective components of his excessive force claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993); *see also Shand v. Rodriguez*, No. 3:20-CV-1268 (SVN), 2021 WL 5988629, at *3 (D. Conn. Dec. 17, 2021) ("An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim." (citation omitted)).

Mr. Jones alleges use of excessive force by both Officer Wagner and Lieutenant Durant. The Court will review each of those claims below.

### a. Officer Wagner

Mr. Jones has alleged that Officer Wagner assaulted and attempted to strangle him.[5] *See* Compl. at 5; *see also* Obj. to Defs.' Mot. for Summ. J. at 1–2, ECF No. 101 (Feb. 1, 2022). Mr. Jones also alleges Officer Wagner "slammed" him against a brick wall and "slammed" his hand into Mr. Jones's throat, and, just before the incident, allegedly said, "this is for Erfe," in reference to a lawsuit Mr. Jones had filed against Warden Erfe. Compl. at 5. Mr. Jones also alleges that he did not act in a threatening manner when Officer Wagner suddenly slammed him against the wall. *Id.* at 21.

This account of events contradicts evidence provided in Defendants' motion for summary judgment, including Officer Johnson's affidavit. *See* Ex. 4 to Mot. for Summ. J. ¶ 12, ECF No. 91-6 (Jan. 14, 2022) ("Johnson Aff.") ("I moved within about two feet of them and began to talk to Jones, but he ignored me and then quickly took several aggressive steps toward Wagner while continuing to be verbally aggressive."). Officer Wagner also has provided an affidavit stating

---

[5] In response to the motion for summary judgment, Mr. Jones states that Officer Johnson, who is not a defendant, was the officer who "chok[ed]" him. *See* Obj. to Defs.' Mot. for Summ. J. at 2, ECF No. 101 (Feb. 1, 2022). The Court notes that Officer Johnson was not named as a defendant in the Complaint. *See* Compl. at 1, 3.

that, at the time he took these actions, he perceived Mr. Jones's move towards him as a threat to his safety. *See* Ex. 3 to Mot. for Summ. J. ¶¶ 15–20, ECF No. 91-5 (Jan. 14, 2022) ("Wagner Aff.").

The Supreme Court has held that, where the parties present conflicting versions of an incident and one party has submitted videotape evidence on summary judgment, the court may— and, indeed, where one version of the events is "utterly discredited" by a videotape, should— view the facts "in the light depicted by the videotape." *Scott v Harris*, 550 U.S. 372, 380–81 (2007). Here, the Defendants have provided surveillance footage of the alleged events. *See* Ex. 5 to Mot. for Summ. J. (Jan. 14, 2022) ("Video I"); *see also* Ex. 8 to Mot. for Summ. J. (Jan. 14, 2022) ("Video II").[6]

A review of the surveillance footage provided by Defendants, however, does not "utterly discredit" Mr. Jones's version of events; rather, whether Mr. Jones was acting in a threatening manner, or even whether he took any "aggressive steps" before Officer Wagner responded by pushing him to the wall and subduing him on the ground, is largely obscured. Indeed, from the vantage point provided in the surveillance footage, the video reasonably could be viewed as showing Officer Wagner taking the first step towards Mr. Jones right before he pushed him against the wall. In any event, the video does not affirmatively show, as Defendants claim, a threatening action by Mr. Jones before Officer Wagner pushed him into the wall and then subdued him on the ground.

As a result, the competing accounts of what occurred and the fact-intensive inquiry involved, including assessment of surveillance footage, presents a genuine factual dispute about the objective reasonableness of the use of force that should be made by a jury, as well as whether

---

[6] The videos were filed manually. *See* Notice, ECF No. 100 (Jan. 31, 2022).

Officer Wagner's actions were wanton and malicious rather than "good-faith effort to maintain or restore discipline . . . ." *See Hudson*, 503 U.S. at 7; *see also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). As a result, Defendants are not entitled to summary judgment on these grounds. *See Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003) (noting that a plaintiff may prevail on an excessive force claim, even where he is accused of engaging in an initial act of aggression, "if he is able to show that [the officer] used more force than was necessary to subdue him").

Moreover, summary judgment cannot be granted to Defendants on the excessive force claim against Officer Wagner on the grounds of lack of serious injury. While the extent of a plaintiff's injury is relevant to an Eighth Amendment excessive force claim, *Wilkins*, 559 U.S. at 37–38, it is the force used, not the injury sustained, that "ultimately counts," *id*. Here, viewing the evidence in the light most favorable to Mr. Jones, he was grabbed by an officer, pushed into a wall, and then subdued on the ground with several officers on top of him—in other words, more than a potentially inactionable "push or shove." *Abreu v. Nicholls*, 368 F. App'x 191, 194 (2d Cir. 2010) (summary order); *see also Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (noting that, even when a prison official acts maliciously or sadistically, "not every push or shove . . . violates a prisoner's constitutional rights" (internal citation, alteration, and quotation marks omitted)). As a result, even without serious injury, the record evidence, viewed in the light most favorable to Mr. Jones, suffices to sustain his Eighth Amendment claim. *See Wilkins*, 559 U.S. at 34 ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." (quoting *Hudson*, 503 U.S. at 4)).

Nor, viewing the facts in the evidence in the light most favorable to Mr. Jones, is Officer Wagner entitled to summary judgment on the basis of qualified immunity. While an officer cannot be liable where "force was applied in a good-faith effort to maintain or restore discipline," rather than "maliciously and sadistically to cause harm[,]" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7), the Court, as explained above, cannot determine at this stage of the proceedings whether Mr. Jones was acting in a threatening manner before he was pushed up against the wall and then subdued on the ground. As a result, until the trier of fact resolves this factual issue, the Court cannot determine whether a reasonable correctional officer would have understood Officer Wagner's actions to be a reasonable, good faith attempt to restore order. *See Ramos v. Lajoie*, No. 3:11-CV-679 (DJS), 2014 WL 2711842, at *3 (D. Conn. June 16, 2014) (denying summary judgment on qualified immunity grounds where "the court cannot determine whether the plaintiff was refusing to comply with orders to get on the ground" and therefore "cannot determine whether a reasonable correctional officer would have understood the defendant's actions to be a reasonable, good faith attempt to restore order").

Accordingly, Defendants' motion for summary judgment will be denied as to the excessive force claim against Officer Wagner. In the absence of evidence apart from the surveillance footage, which, as noted above, is ambiguous in several key respects, Mr. Jones's motion for summary judgment also will be denied as to this claim.

### b.  Lieutenant Durant

"The use of pepper spray 'constitutes a significant degree of force' and can in certain cases form the basis of a constitutional violation." *Quinones v. Rollison*, No. 18-CV-1170 (AJN), 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010)); *see also Tracy*, 623 F.3d at 98 ("Unquestionably, infliction of pepper spray on

an arrestee has a variety of incapacitating and painful effects[.]"). Here, viewing the evidence in the light most favorable to Mr. Jones, a reasonable fact finder could conclude that Lieutenant Durant's use of pepper spray was objectively unreasonable and an excessive use of force.

Defendants assert that there is no genuine dispute as to whether and to what degree Mr. Jones resisted officers' attempt to subdue him, thereby necessitating the use of force. The evidence to which Defendants point in support of this argument includes affidavits in which the officers state that Mr. Jones actively resisted the officers' attempt to subdue him. *See* Def. SMF ¶¶ 21, 30–31; *see also* Wagner Decl. ¶¶ 25, 27–29; Ex. 6. to Mot. for Summ. J. ¶¶ 20–21, 27–28, ECF No. 91-8 (Jan. 14, 2022) ("Mack Aff."); Ex. 7. to Mot. for Summ. J. ¶¶ 5–6, ECF No. 91-9 (Jan. 14, 2022) ("Durant Aff."). Defendants also depict the video evidence as showing that Mr. Jones was actively, physically resisting. *See* Def. SMF ¶¶ 21, 30–31 (citing, *inter alia*, Video I). But Mr. Jones's actions, after he was subdued on the ground, are partially obscured on the video by the team of officers who responded.

Although the video does not preclude the possibility that Mr. Jones resisted in some fashion, even if it were undisputed that Mr. Jones engaged in any distinct physical action to evade the officers' efforts, "a reasonable jury could conclude that [this] was not an act of or signifying active resistance." *See Ross v. Willis*, No. 16-CV-6704 (PAE) (KNF), 2021 WL 3500163, at *11 (S.D.N.Y. Aug. 9, 2021) (citation omitted); *see also Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015) (denying summary judgment on excessive force claim where plaintiff refused to put her hands behind her back to be handcuffed because this "non-threatening form of resistance" was "only one factor to be considered").

Further, the distance from which the chemical agent was used on Mr. Jones may enhance his claim of excessive force. *Willis*, 2021 WL 3500163, at *12 (denying summary judgment in

part based on factual dispute about distance from which the pepper spray was deployed (citing

*Tracy*, 623 F.3d at 98)). Defendants provide no evidence in their affidavits about the distance

between Mr. Jones and Lieutenant Durant when he deployed the pepper spray. The video does

not clearly show the moment at which the chemical agent was deployed; however, it does clearly

depict that Mr. Jones already was restrained by multiple officers when Lieutenant Durant arrived

on the scene. *Cf. Quinones*, 2020 WL 6420181, at *6 (finding that officer's "use of force was not

gratuitous" when chemical agent deployed, where the "Plaintiff was not restrained" but rather

able to immediately leave the scene (emphasis omitted)).

   Finally, Mr. Jones's lack of evidence of serious injuries does not suffice to grant

summary judgment to Defendants on this claim, even though there is no evidence in the record to

support that Mr. Jones suffered an asthma attack. The use of a chemical agent, or pepper spray,

in and of itself, "constitutes a significant degree of force" and its use can sometimes amount to a

constitutional violation, unless "the force was applied in a good-faith effort to maintain or restore

discipline." *Id*. at *4 (internal citations omitted); *see also Tracey*, 623 F.3d at 98 ("Infliction

of pepper spray on an arrestee has a variety of incapacitating and painful effects, and, as such, its

use constitutes a significant degree of force." (internal citation omitted)). For the reasons

explained above, in the absence of evidence of resistance in the video surveillance footage, the

Court cannot conclude that the pepper spray was applied in a good faith effort to maintain or

restore discipline, as the officers claim.

   The surveillance footage further shows that, after the chemical agent was deployed, Mr.

Jones repeatedly complained about eye pain as a result of the pepper spray, claiming that he was

unable to fully decontaminate his eyes. *See* Video II. Although his medical records later show

that his pain subsided, case law in this Circuit "cautions wariness about granting summary

judgment on this basis, on the ground that, if injuries of 'limited duration' were enough to defeat an excessive force claim, 'police and corrections officers would essentially be able to utilize pepper spray and similar chemical agents with impunity.'" *Willis*, 2021 WL 3500163, at *12 (quoting *Lewis v. Clarkstown Police Dep't*, No. 11-CV-2487 (ER), 2014 WL 1364934, at *6 (S.D.N.Y. Mar. 31, 2014), *adhered to on reconsideration*, No. 11-CV-2487 (ER), 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014)); *see also id.* ("The fact that plaintiff did not require substantial medical treatment at the hospital following the incident does not necessarily mean that [defendant] is entitled to summary judgment." (quoting *Hodge v. Village of Southampton*, 838 F. Supp. 2d 67, 77 (E.D.N.Y. 2012)); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." (citation omitted)).

As a result, the undisputed fact that Lieutenant Durant deployed a chemical agent, combined with the genuine issues of material fact noted above, preclude granting Lieutenant Durant summary judgment on Mr. Jones's excessive force claim against him. *Willis*, 2021 WL 3500163, at *12 (denying summary judgment, although "defendants depict[ed] the video as making clear that [plaintiff] was actively, physically resisting," where "there is no footage of [defendant] resisting once, let alone multiple times"); *see also Tracy*, 623 F.3d at 98 ("[A] reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force[.]").

Nor, viewing the facts in the evidence in the light most favorable to Mr. Jones, is Lieutenant Durant entitled to summary judgment on the basis of qualified immunity. It is well established, as of June 2016, in the Second Circuit that "no reasonable officer could have

believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee." *Tracy*, 623 F.3d at 99 n.5; *see also id*. (it is well-established "that the use of entirely gratuitous force is unreasonable and therefore excessive"). As explained above, a genuine issue of material fact exists as to whether Mr. Jones was resisting, and, as a result, although the issue of qualified immunity remains an open issue in this case, summary judgment cannot be granted to Lieutenant Durant at this stage of the proceedings on qualified immunity grounds.

Accordingly, Defendants' motion for summary judgment will be denied as to the excessive force claim against Lieutenant Durant.[7] In the absence of evidence apart from the surveillance footage, which, as stated above, is ambiguous in several key respects, Mr. Jones's motion for summary judgment also will be denied as to this claim.

### 2. Retaliation

To prevail on a retaliation claim, Mr. Jones must present evidence establishing three elements: (1) he engaged in protected speech or conduct, (2) the defendants took adverse action against him, and (3) a causal connection between the protected speech and the adverse action. *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (citation omitted). The adverse action must be sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id*. at 93–94 (citing *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d

---

[7] Mr. Jones argues in response to the motion for summary judgment that Lieutenant Durant may be found liable for Officer Johnson's alleged attempt to strangle him on a theory of supervisory liability. *See* Pl. Mot. But Mr. Jones cannot attribute the actions of Officer Johnson to Lieutenant Durant merely because Lieutenant Durant is a supervisor. *See Quintin v. County of Nassau*, No. 18-CV-5852, 2022 WL 888950, at *3 (E.D.N.Y. Mar. 25, 2022) ("[I]t is well-settled that to establish liability under Section 1983, a plaintiff must 'plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution'" (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)); *Karelefsky v. Brann*, No. 20-CV-9485, 2022 WL 624424, at *2 (S.D.N.Y. Mar. 1, 2022) (observing that to find personal involvement and "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official" (citing *Tangreti*, 983 F.3d at 620)). Accordingly, any claim for supervisory liability against Lieutenant Durant will be dismissed, although the claim against him individually for an Eighth Amendment violation may proceed.

Cir. 2004)).

In evaluating the second element, courts consider the circumstances of the particular case. "[O]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (citation omitted). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) (internal quotation marks and citation omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Prisoners may be required to tolerate more than public employees . . . before a retaliatory action taken against them is considered adverse." *Id*. (internal quotation marks, citation, and alteration omitted); *see also Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (Courts review prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

The Court permitted Mr. Jones's retaliation claim to proceed on Mr. Jones's allegation that Officer Wagner attacked and attempted to strangle him in retaliation for a lawsuit Mr. Jones filed against Warden Erfe. *See* Initial Review Order at 7–8. Mr. Jones alleged that Officer Wagner spoke of the lawsuit, Case No. 3:15-CV-613 (VAB), on many occasions and, immediately before the alleged assault, Officer Wagner said, "this is for Erfe." Compl. at 5.

Even if the Court assumes, without deciding, that Officer Wagner's actions were sufficient to constitute retaliation, Mr. Jones still must establish a causal connection between his protected activity and the adverse action. To do so, he needs more than conclusory allegations.

The evidence required, however, may be circumstantial, and may be based upon such evidence as: "(1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) the plaintiff's vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation." *Merriweather v. O'Meara,* No. 9:17-CV-1129 (LEK/TWD), 2018 WL 10038783, at *5 (N.D.N.Y. Feb. 16, 2018) (citation omitted).

Mr. Jones contends that Officer Wagner assaulted him because he filed a lawsuit against Warden Erfe; that lawsuit, however, was filed nearly three years before the incident. Thus, temporal proximity is lacking. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding that the passage of three months weighed against finding a causal connection); *see also Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554–55 (2d Cir. 2001) (collecting cases).

The causal connection is even more attenuated, where the alleged retaliatory conduct was in response to a complaint against a different corrections officer. *See Jones v. Fischer*, No. 9:10-CV-1331 (GLS) (ATB), 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013) ("Retaliation claims have been dismissed when they are supported only by conclusory allegations that the retaliation was based upon complaints against another officer." (citation omitted)); *see e.g.*, *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claims against a correctional officer where the only alleged basis for retaliation was a complaint about a prior incident by another correctional officer); *see also Hare v. Hayden*, 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.").

Accordingly, Defendants' motion for summary judgment will be granted on the

retaliation claim, and Mr. Jones's motion for summary judgment on this claim will be denied.

### 3. Deliberate Indifference to Serious Medical Need

Both the Supreme Court and the Second Circuit have held that prison officials' deliberate

indifference to serious medical needs constitutes cruel and unusual punishment in violation of

the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*,

143 F.3d 698, 702 (2d Cir. 1998). To state a claim for deliberate indifference to a serious

medical need, the plaintiff must show that the prison official knew that he faced a substantial risk

of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

*Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S.

825, 837 (1994)).

There are objective and subjective components to the deliberate indifference test. Under

the objective prong, the plaintiff's medical need must be "a serious one." *Brock v. Wright*, 315

F.3d 158, 162 (2d Cir. 2003) (citations omitted). Subjectively, the defendant's conduct must

constitute recklessness; he must act or fail to act while "actually aware of a substantial risk that

serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)

(citation omitted); *see also Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138

(2d Cir. 2013) (requiring the defendants to have been "subjectively reckless"). Negligence

sufficient for a claim for medical malpractice does not rise to the level of deliberate indifference

and is not cognizable under § 1983. *See Salahuddin*, 467 F.3d at 280.

First, Mr. Jones alleges that the deployment of a chemical agent when he had asthma

constituted deliberate indifference to a serious medical need. Even assuming, without deciding,

that a serious medical need existed, however, the record evidence shows that neither Nurse

Broderick nor any other Defendant was aware of a substantial risk that serious inmate harm

18

would result from use of the chemical agent when it was deployed. *See* Durant Aff. ¶ 22; Ex. 10

to Mot. for Summ. J. ¶¶ 20, 22, 25–26, ECF No. 86 (Jan. 14, 2022) ("Broderick Aff.").

Meanwhile, Mr. Jones has provided no evidence to the contrary.

Second, Mr. Jones alleges that the residual effects of a chemical agent constituted a

serious medical need to which Nurse Broderick demonstrated deliberate indifference when she

failed to treat and report the effects of the pepper spray. The residual effects of a chemical agent

generally do not, without more, constitute a serious medical need. *See Paschal-Barros v.*

*Balatka*, No. 3:18-CV-2021 (VLB), 2020 WL 5230994, at *5 (D. Conn. Sept. 1, 2020) (residual

effects of a chemical agent generally do not constitute a serious medical need); *Alston v.*

*Butkiewicus*, No. 3:09-CV-207 (CSH), 2012 WL 6093887, at *16 (D. Conn. Dec. 7, 2012)

(collecting cases); *but see Deegan v. Doe #1*, No. 3:19-CV-1356 (MPS), 2019 WL 5964816, at

*5 (D. Conn. Nov. 13, 2019) (allegation of pain from chemical agent sufficient to constitute

serious medical need on initial review); *Parsons v. City of New York*, No. 17-CV-2707 (MKB),

2017 WL 2656135, at *3 (E.D.N.Y. Jun 19, 2017) ("Injuries or pain resulting from being

sprayed with mace sufficiently establish the existence of a serious medical need deserving of

medical attention."); *West v. City of New York*, No. 13-CV-5155 (PAE), 2014 WL 4290813, at

*5 (S.D.N.Y. Aug. 28, 2014) (finding on motion to dismiss that prisoner established serious

medical need where he alleged he was sprayed with mace which resulted in "difficulty breathing,

severe itching and burning, and skin discoloration").

Here, the record evidence shows that, although Mr. Jones stated that he was in pain

immediately after deployment of the chemical agent, he immediately was transferred to a

decontamination shower, and spoke continuously, without apparent respiratory distress,

throughout that period. *See* Video II. Nurse Broderick evaluated him thereafter, and Mr. Jones

denied any injuries or complaints. *See* Broderick Aff. ¶¶ 23, 26, 27; *see also* Ex. 9 to Mot. for

Summ. J., ECF No. 86 (Jan. 14, 2022) (Medical Incident Report).[8] Mr. Jones has not provided

any evidence to rebut this account, or otherwise substantiated that the medical care he received

thereafter from Nurse Broderick,[9] regardless of whether he had a serious medical need, was

inadequate, much less deliberately indifferent.

Third, Mr. Jones alleges deliberate indifference to a serious medical need where Nurse

Broderick allegedly approved him for placement in in-cell restraints knowing that the restraints

would prevent him from properly decontaminating. In her affidavit, Nurse Broderick explains

that she did not have authority to approve the use of such restraints and moreover that, while in

in-cell restraints, an inmate's hands are handcuffed in front of his body and he is able to eat and

wash his face and head. Broderick Aff. ¶ 24. She also submitted evidence in her affidavit that,

when she checked his in-cell restraints, Mr. Jones "deni[ed] pain/discomfort." *Id*. ¶ 26. Mr. Jones

has presented no evidence to suggest that this account was false.

Accordingly, Defendants' motion for summary judgment also will be granted on the

claim against Nurse Broderick, and Mr. Jones's motion for summary judgment on this claim will

be denied.

### 4.  Remaining State Law Claims

Mr. Jones also seeks to assert state law claims of assault and battery against Officer

Wagner and Lieutenant Durant, in connection with the alleged excessive force used against him.

Defendants argue that these claims should be dismissed where it was "objectively reasonable

---

[8] Medical records were filed under seal. *See* Sealed Doc. at 3, ECF No. 86 (Jan. 13, 2022).

[9] To the extent that Mr. Jones seeks to allege an Eighth Amendment claim for deliberate indifference to a serious medical need against any other defendant, the Court notes that the same reasoning applies as to each theory of liability.

under the circumstances for [Officer] Wagner to fear for his safety given the plaintiff's words and actions, and that his response to that threat was lawful and did not violate the Eighth Amendment." Defs. Mot. at 8.

A genuine issue of material fact, however, precludes summary judgment on the Eighth Amendment claims against Officer Wagner and Lieutenant Durant, as explained above, including as to the objective reasonableness of the use of force by each of these Defendants. In the absence of any other arguments for summary judgment by Defendants on these state law claims, the Court will retain jurisdiction over these claims at this stage of the proceedings. *Compare* 28 U.S.C. § 1367(c)(3), *with Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims.").

## IV.    CONCLUSION

For the foregoing reasons, Mr. Jones's [70] motion for summary judgment is **DENIED**. Defendants' [91] motion for summary judgment is **DENIED in part** as to the excessive force claims against Officer Wagner and Lieutenant Durant, as well as the state law claims for assault and battery; Defendants' motion for summary judgment is **GRANTED in part** as to all other remaining federal claims.

**SO ORDERED** this 13th day of May, at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge